UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DONRICCO ARNOLD, *et al.*,

                  Plaintiffs,         No. 09-cv-10371
                                                  Hon. Gerald E. Rosen

vs.

Midwest Recovery, *et al.*,

                  Defendants.
_____/

**OPINION AND ORDER GRANTING IN PART**
**DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT**

At a session of said Court, held in
the U.S. Courthouse, Detroit, Michigan
on    January 27, 2011   

PRESENT:  Honorable Gerald E. Rosen
                       United States District Judge

## I. INTRODUCTION

On January 31, 2009, Plaintiffs Donricco Arnold and Georgetta Brown-Arnold on her own behalf and as next friend of Azalya Arnold filed a twelve-count complaint against the City of Dearborn, Dearborn Police Department (DPD), several officers of the DPD, Midwest Recovery, Inc. (Midwest), two employees of Midwest, and Telcom Federal Credit Union (Telcom).[1] Plaintiffs have alleged a variety of federal and state law

---

[1] On February 10, 2010, the Court entered a stipulated order dismissing Defendant Telcom Federal Credit Union with prejudice. On January 14, 2011, in response to the Court's order to show cause [Dkt. #55], Plaintiffs agreed to the dismissal of Midwest employee Kevin Blake [Dkt. #56].

claims against the Defendants related to the repossession of Plaintiffs' vehicle on April 15, 2008.

Count I asserts a claim under 42 U.S.C. § 1981. The Arnolds claim that Defendants deprived them of the same contractual rights white citizens are afforded.

Count II asserts a claim under 42 U.S.C. § 1982. The Arnolds claim that Defendants deprived them of the same right to hold and use property that white citizens are afforded.

Counts III and IV assert general claims under 42 U.S.C. §§ 1983 and 1986 for the deprivation of Constitutional rights and neglecting to prevent a breach of peace.

Counts V asserts a claim under 42 U.S.C. § 1988 for attorneys fees based on the enforcement of §§ 1981-83.

Count VI asserts a state law claim for wrongful possession. The Arnolds claim that Defendants violated the Michigan Uniformed Commercial Code by engaging in a self-help vehicle recovery and breaching the peace.

Count VII is a tort claim for breach of the peace. The Arnolds claim that Defendants' behavior and methods used to repossess the Arnolds' vehicle amounted to a breach of the peace.

Count VIII is a tort claim for trespass. The Arnolds claim that Defendants trespassed on their real property, causing physical damage, when they repossessed the Arnolds' vehicle.

Count IX asserts a claim under the Fair Debt Collection Practices Act (FDCPA).

The Arnolds claim that Defendants Midwest and Midwest employee, John Henry, violated the FDCPA by committing fraud and deceit in the process of collecting a debt.

Counts X and XII assert claims for conspiracy under both federal and tort law and a separate claim for concert of action.[2] The Arnolds make a general claim that Defendants conspired to deprive them of rights guaranteed by law.

Count XI asserts a claim under the Michigan Consumer Protection Act (MCPA). The Arnolds claim that Defendants committed multiple violations of the MCPA including causing a probability of confusion.

The Arnolds seek compensatory and punitive damages, attorney fees and costs, and equitable relief to prevent the same actions from occurring against others. The action is brought in federal court pursuant to 42 U.S.C. §§ 1981-1983, 1985, 1986, 1988.

In their responses to Defendants' motions for summary judgment, Plaintiffs withdraw all claims against the City of Dearborn, DPD, and DPD officers except Counts III and V for deprivation of Constitutional rights under § 1983 and attorney fees under § 1988. Additionally, Plaintiffs withdraw Counts IV, IX, X, XI, and XII as to Defendants Midwest and Henry. Finally, although discovery in this matter had closed, Plaintiffs request leave to amend their complaint by adding a claim under the Michigan Collection Practices Act. MCL 445.251,252.[3]

---

[2] The Arnolds' complaint refers to "Section 1985 of Title 11, United States Code" for their conspiracy claim. The proper federal statute for a conspiracy claim is 42 U.S.C. § 1985.

[3] Plaintiffs included a request for leave to amend their complaint for the first time on August 18, 2010 in their response [Dkt. #50] to Defendant Midwest and Henry's motion for

Through the present motions, Defendants seek an award of summary judgment in their favor on all of the Arnolds' claims. The City of Dearborn, DPD, and officers of the DPD (collectively the Dearborn Defendants) have filed a motion for summary judgment, and Midwest along with its employee, John Henry, have filed a separate motion for summary judgment. In support of these motions, all Defendants argue that the Arnolds have failed to establish any constitutional violations. Defendants Midwest and Henry additionally claim there was no breach of the peace, wrongful possession, or trespass. Separately, the Dearborn Defendants argue that the DPD police officers are immune from suit in their individual capacity.

The Arnolds have filed a response to both motions for summary judgment, and the Dearborn Defendants have filed a reply brief. Having reviewed the parties' submissions in support of and opposition to the motions and the accompanying record, the Court finds that the pertinent facts and legal arguments are fully presented in these written materials and that oral argument would not aid the decisional process. Accordingly, the Court will decide Defendants' motions "on the briefs." *See* Local Rule 7.1(f)(2), U.S. District Court, Eastern District of Michigan. This opinion and order sets forth the Court's rulings on these motions.

## II. FACTS

---

summary judgment. Discovery in this matter closed on June 28, 2010, and the motion cutoff date was July 29, 2010. Plaintiffs have shown no good cause – and the Court can find none – to grant Plaintiffs' untimely request, and it is therefore, denied.

Donricco Arnold and his wife, Georgetta Brown-Arnold, are residents of the City of Dearborn, Michigan, and are African American. During the pertinent time of this matter, they resided at 1759 N. Waverly Street, Dearborn, Michigan 48128. This action arises out of the actions taken by the Defendant DPD officers and Defendant Midwest's employees during the repossession of the Arnolds' 2005 Chrysler PT Cruiser (vehicle), VIN 3C4FY48BX5T551059 on April 15, 2008. Other than the repossession which is the subject of this complaint, the Arnolds have had five other repossessions of four different vehicles within the last ten years.

Defendant DPD is the law enforcement agency for the City of Dearborn. Defendants John Ashcroft, Eric Christensen, Edward Fries, James Isaacs, John Kostiuk, Erick Krawczyk, Alan Leveille, Anthony Mencotti, Gordon Morse, Donald Wilcox, and Michael York, Jr. are City of Dearborn police officers. Defendant Midwest is a Michigan corporation, which provides full service recovery for creditors seeking to repossess collateral. Defendant John Henry is an employee of Midwest.

Mr. Arnold purchased the Chrysler PT in 2006 through a loan from Telcom. Mr. Arnold admits that he failed to make the weekly payments on the vehicle, giving Telcom the right to repossess it. At some point in 2007, the Arnolds filed for bankruptcy, creating an automatic stay against all collection efforts by the Arnolds' creditors. On October 1, 2007, Bankruptcy Judge Phillip Shefferly from this District entered an order terminating the automatic stay as it applied to the vehicle. The order permitted Telcom to take possession of and foreclose its security interest in the vehicle. On December 12, 2007,

Telcom submitted an order with Midwest to repossess the vehicle. On January 3, 2008, Judge Shefferly granted a motion of redemption in favor of the Arnolds, which allowed them to purchase the vehicle for $8,512.50 within thirty days. When the Arnolds failed to make the requisite payment, Midwest began efforts to locate the vehicle on behalf of Telcom in February 2008 and eventually found and repossessed the vehicle on April 15, 2008.

On the date of the repossession, Kevin Blake, an employee of Midwest, spotted Mrs. Arnold driving the vehicle and pursued her in his repossession truck. Blake alleges that Mrs. Arnold drove away from her home upon spotting the truck and refused to pull over when he instructed her to do so. Mrs. Arnold claims that she did not know who was pursuing her, and after attempting to first elude the truck, she then drove to her residence. At some point during the pursuit, Mrs. Arnold called her husband using her cell phone. Mr. Arnold left his place of employment to assist his wife.

Upon arrival at her residence, Mrs. Arnold pulled into the garage. Blake, still pursuing her, reversed his truck up the Arnolds' driveway and attached the lift to tow the vehicle. Mrs. Arnold exited the vehicle along with her three-year old daughter, Azalya, and Blake told them that he was there to take the vehicle. An argument between Mrs. Arnold and Blake ensued. A few minutes later Defendant Henry arrived at the Arnolds' residence in his tow truck and identified himself with a badge and told Mrs. Arnold that he and Blake were there to repossess the truck. The argument between Mrs. Arnold and the two repossession men continued for a few more minutes, until Mr. Arnold arrived

from the alley behind his home. Mr. Arnold and the repossession men then engaged in a brief physical struggle, before Mr. Arnold broke free. Blake and Defendant Henry allege that they moved away from Mr. Arnold after he brandished a handgun that was tucked in his waistline and threatened to shoot them. Mr. Arnold then released the lift from vehicle, and entered Blake's tow truck through the rear window. He drove Blake's truck to the end of the driveway, before closing and locking both the overhead and side doors to the garage with the vehicle still inside. He then instructed Mrs. Arnold to get back in the house before departing through the back of his residence and returning to work. On his way back to work, he called his parents, who lived near the Arnolds' home, to check on Mrs. Arnold.

While Mr. Arnold was detaching the lift from Blake's truck, Blake and Henry retreated to Defendant Henry's truck, which was parked on the street in front of the Arnolds' home, and called 911. They reported to the dispatcher that they were conducting a repossession when a man with a gun began threatening them. Mr. Arnold claims that he used to own two handguns, but they were stolen. The Law Enforcement Information Network (LEIN) records show that Mr. Arnold has two handguns registered in his name, and neither are reported as stolen.

The Defendant Officers arrived on the scene, and Henry and Blake informed them that Mr. Arnold had retreated into his home.[4] Mr. Arnolds' parents arrived at the same

---

[4] Apparently from their position on the road, Blake and Henry did not see Mr. Arnold departing through the back of his home and into the alley, where he had parked his trailer.

time as the police officers, and Mr. Arnold's father also informed the police that he thought his son was in the home. Mrs. Arnold exited her home from the rear door along with her daughter. The Defendant Officers ordered her to step away from the home and put her and Azalya in a squad car for safety. Mr. Arnold's mother was able to reach Mr. Arnold using her cell phone, which she gave to Officer Fries. Mr. Arnold told Officer Fries that he was on his way to work. Officer Fries instructed Mr. Arnold that he needed to return home immediately, but Mr. Arnold said that he had to return his trailer to work before coming home. Mr. Arnold then apparently hung up the phone. Unsure of whether Mr. Arnold was telling the truth or armed and in the home, the Defendant Officers called for him to exit the house, but there was no response. The officers then obtained consent from Mrs. Arnold and Mr. Arnold's mother to enter and search the home.[5] After receiving calls from concerned parents in the area, David Musten, the Dearborn Public Schools communication coordinator, contacted the police to get information regarding the situation. The police advised Mr. Musten to take precautionary measures, and he temporarily locked down Howard Elementary School.

After searching the home and determining that Mr. Arnold was not in it, the Defendant Officers decided to search the detached garage, which was locked. When police asked Mrs. Arnold if she would open the garage, she told them both the key and

---

[5] During deposition testimony, Mrs. Arnold first states she told the police "they could come in and see wasn't nobody in there but my dog." (Georgetta Brown-Arnold Dep. 125:17-125:20.) In response to subsequent questioning regarding whether or not she told them they could go in and look, she testified to saying "[n]o, I don't believe so." (Id. 125:25-126:1.)

garage opener were in the vehicle, which was locked in the garage. Unable to obtain a key or garage opener, the Defendant Officers forcibly entered the garage through the side door. Upon discovering that Mr. Arnold was not in the garage, Mr. Arnold's mother was allowed to recover all personal items from the vehicle before it was repossessed by Blake under the supervision of the police officers. Because Blake was able to repossess the vehicle without damage to his tow truck or personal injury, he decided not to pursue any charges against Mr. Arnold. The Defendant Officers then released Mrs. Arnold and left the scene before Mr. Arnold returned home.

### III. ANALYSIS

**A.      Standards Governing Defendants' Motion**

Under the pertinent Federal Rule, summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).[6] As the Supreme Court has explained, "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.

---

[6] On December 1, 2010 a new version of Fed. R. Civ. P. 56 took effect. Due to the parties' submission of summary judgment motions prior to the effective date, the Court's opinion and order is decided under, and cites, the old rule.

Ct. 2548, 2552 (1986).

In deciding a motion brought under Rule 56, the Court must view the evidence in a light most favorable to the nonmoving party. *Pack v. Damon Corp.*, 434 F.3d 810, 813 (6th Cir. 2006). Yet, the nonmoving party "may not rely merely on allegations or denials in its own pleading," but "must-by affidavits or as otherwise provided in [Rule 56]—set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). Moreover, any supporting or opposing affidavits "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated." Fed. R. Civ. P. 56(e)(1). Finally, "the mere existence of a scintilla of evidence that supports the nonmoving party's claims is insufficient to defeat summary judgment." *Pack,* 434 F.3d at 814 (alteration, internal quotation marks and citation omitted).

**B.     Dismissal of Plaintiffs' Discrimination Claims**

Counts I and II are based on the claim that Defendants deprived Plaintiffs of the same rights afforded to white citizens. Both 42 U.S.C. § 1981 and § 1982 are derived from the Civil Rights Act of 1866, and a claim under either statute requires a showing of racial or class-based discrimination. *General Bldg. Contractors Ass'n, Inc. v. Pennsylvania,* 458 U.S. 375, 390 (1982) (citations omitted). Although Plaintiffs are African American, they fail to provide any facts related to discrimination based on their race to support these two claims. In their response to Midwest and John Henry's motion for summary judgement, Plaintiffs broadly argue that summary judgment should not be

granted as to Counts I and II, but they fail to address substantively why summary judgment should not be granted. Rather, in their response section for Counts I and II, Plaintiffs simply state that "[t]hese causes of action will be discussed in greater detail in Plaintiffs' Answer and Objection to Motion for Summary Judgment by Defendants Dearborn and Police Defendants . . . ." (Pls.' Response [Dkt. #50] 13.) In responding to the Dearborn Defendants' motion for summary judgment, Plaintiffs only address §§ 1983 and 1988, and they provide no factual support whatsoever for claims under §§ 1981 and 1982 that might establish a reasonable dispute over facts material to their claims. Therefore, the Court readily concludes that Plaintiffs have failed to establish a genuine issue for trial regarding Counts I and II, which are properly dismissed. Additionally, as discussed in detail below, Plaintiffs may not bring a claim for violation of Constitutional rights against Defendants Midwest and Henry, who are private actors.

**C.      42 U.S.C. § 1983 Claims**

In Count II of the Complaint, the Arnolds raise claims against all Defendants under 42 U.S.C. § 1983. To succeed on a cause of action under 42 U.S.C. § 1983, a plaintiff must establish that: 1) he was deprived of a right secured by the federal Constitution or laws of the United States; and 2) the deprivation was caused by a person acting under color of state law. 42 U.S.C. § 1983; *Flagg Bros. v. Brooks*, 436 U.S. 149, 155-57, 98 S. Ct. 1729 (1978); *Ziegler v. Aukerman*, 512 F.3d 777, 782 (6th Cir. 2008). Here, the parties do not dispute that the Dearborn Defendants are state actors. Thus, the primary issues before the Court are whether the Defendants deprived Plaintiffs of a right secured

by the Constitution or by federal laws and whether the Midwest Defendants were acting under color of state law when they repossessed Plaintiffs' vehicle. Plaintiffs have alleged violations of their Fourth Amendment and Fourteenth Amendment rights.

   **1. Unlawful Search**

Throughout their briefs, Plaintiffs have muddled their claims under the Fourth and Fourteenth Amendments. An unlawful search is a violation of the Fourth Amendment. Although Plaintiffs make a very general claim under 42 U.S.C. § 1983 in their complaint without any mention of the Fourth Amendment, their factual allegations claim that the Dearborn Defendants conducted an unlawful search of Plaintiffs' home and detached garage. The Dearborn Defendants' contend in their motion for summary judgment that Plaintiffs consented to the searches or alternatively that exigent circumstances necessitated the searches. Without citing any case law or analysis, Plaintiffs dedicate merely one short paragraph of their response brief to this claim, and only challenge the consent to search the garage.

The Dearborn Defendants did not have a warrant to search Plaintiffs' detached garage, and a warrantless search is "per se unreasonable under the Fourth Amendment- subject only to a few specifically established and well-delineated exceptions." *United States v. Roark*, 36 F.3d 14, *5 (6th. Cir. 1994) (quoting *Katz v. United States*, 389 U.S. 347, 357 (1967) (citations omitted)). "A search does not violate the Fourth Amendment where police obtain consent to search from one who possesses common authority over the premises." *United States v. Clutter*, 914 F.2d 775, 777 (6th Cir. 1990). Here, Plaintiffs

do not challenge the Dearborn Defendants' claim that Mrs. Arnold and Mr. Arnold's mother consented to the search of the Arnolds' home. The question for the Court is whether the Dearborn Defendants exceeded the scope of consent by searching the Arnolds' detached garage.

Although the Dearborn Defendants never specifically requested consent to conduct a search, they obtained consent from statements made by Mrs. Arnold and Mr. Arnold's mother. In response to deposition questions regarding consent to search the house, Mrs. Arnold said "I told them that they wasn't there, they could come in and see wasn't nobody in there but my dog." (Georgetta Brown-Arnold Dep. 125:17-125:20.) Mr. Arnold's mother similarly stated in a written statement "I told them not to knock the front door in, go to the back to gain entry." (Rosietta Liles Statement 3.) Both of these statements are clear evidence of voluntary consent to enter and search the Arnold's home. Courts have, however, distinguished consent to search one's home versus a broader consent to search one's premises. *See Roark*, 36 F.3d at \*5 (holding that scope of consent to search house did not extend to surrounding property). The Dearborn Defendants offer no authority to show that a detached garage is within the scope of searching a home, and the Court is aware of no such authority. Although the Arnolds' detached garage, which was only a few feet from the home, is a closer case than a building fifty yards away as in *Roark*, the Court finds that for the purposes of summary judgment, the evidence must be viewed in favor of Plaintiffs' claim that any consent was limited to the search of Arnolds' home.

The Dearborn Defendants additionally argue that Mrs. Arnolds' statements about the garage door keys and opener being locked in the garage should somehow be interpreted as consent to enter and search the garage. The Court finds this argument lacking. Such statements may provide reasonable grounds for the police to forcibly enter the garage, but the police must *first* establish a legal basis for the entry itself.

Having found that issues of fact exist to the scope of consent for the Dearborn Defendants' search, the Court shifts its focus to the Dearborn Defendants' exigent circumstances defense to enter and search the garage without a warrant. "Exigent circumstances arise when an emergency situation demands immediate police action that excuses the need for a warrant." *Johnson v. City of Memphis*, 617 F.3d 864 (6th Cir. 2010). Police officers are not required to wait for a potentially dangerous situation to escalate, but may intervene in order to prevent violence and restore peace. *Id*. The Sixth Circuit has repeatedly recognized "a risk of danger to the police or others" as a an exigent circumstance, excusing the need to obtain a warrant. *United States v. Johnson*, 22 F.3d 674, 680 (6th Cir. 1994). The ultimate question before the Court is whether "it was objectively reasonable for the police in this situation, given the information they had, to enter the [garage]." *City of Memphis*, 617 F.3d at 871.

Here, the Dearborn Defendants received an emergency call from the repossession agents stating that Mr. Arnold was threatening to shoot them. It is undisputed that Mr. Arnold and the Midwest repossession agents had engaged in a physical struggle. These undisputed facts clearly present the potential for a violent situation to develop and

14

escalate. Kevin Blake and Defendant Henry reported to the police that Mr. Arnold went towards the rear of the house after the physical struggle. Mr. Arnold's father told police that he thought Mr. Arnold was in the home. Because the garage is located near the rear of the home, and all the entrances to the garage were locked, it was reasonable for the police to suspect that Mr. Arnold may have hidden inside the garage. Although Mr. Arnold told Officer Fries on the phone that he was returning to work, he suddenly hung up the phone when Officer Fries asked him to return home immediately. When the police asked Mrs. Arnold for keys to the garage, she told them that the keys and garage door opener were all locked inside the garage.

Given all the information the Dearborn Defendants had, the Court finds it was objectively reasonable for them to believe that Mr. Arnold was armed with a gun inside the garage, and there was potential for a violent situation to develop, which the police could prevent by searching the garage. The police felt the threat was serious and credible enough to lock down the local elementary school. Because the police were not required to wait for the situation to escalate into violence, they were authorized to act preemptively. Therefore, the Court finds an exigent circumstance existed to conduct a warrantless search of the garage.[7] Additionally, Plaintiffs fail to provide any response to the Dearborn Defendants' exigent circumstances defense, and therefore, no genuine

---

[7] Although Plaintiffs list the damages to their garage door from the police's forced entry, they do not raise a specific challenge to the use of force to gain entry into the garage. The Court finds that the forced entry was reasonable, because Mrs. Arnold could not provide a garage key or opener upon request by the police.

factual disputes have been presented to the Court on this issue. Accordingly, summary judgment is properly entered in favor of the Dearborn Defendants on the Fourth Amendment claim.

### 2. Repossession as to the Dearborn Defendants

Plaintiffs claim that the repossession of their vehicle violated their Fourth and Fourteenth Amendment freedoms from unreasonable seizures by the State. They cite *Soldal v. Cook County, Ill.*, 506 U.S. 56, 113 S.Ct. 538 (1992) in support of their claim. When making a claim under 42 U.S.C. § 1983 for repossession of a vehicle, the inquiries for both the Fourth and Fourteenth Amendments are the same. "The critical question is whether the officers, who were plainly acting under color of state law, unlawfully facilitated [the repossession]." *Meyers v. Redwood City*, 400 F.3d 765, 771 (9th Cir. 2005). Similarly, the Sixth Circuit has held that "a mere finding that state action is present is insufficient. The state action must rise to the level of significant involvement." *Turner v. Impala Motors*, 503 F.2d 607, 609 (6th Cir. 1974). Mere acquiescence by the police in preventing a violent confrontation between private parties is insufficient to convert the repossession of a vehicle by a private party into state action. *United States v. Coleman*, 628 F.2d 961, 964 (6th Cir. 1980) (citing *Flagg Bros. v. Brooks*, 436 U.S. 149, 98 S.Ct. 1729 (1978)).

Here, Plaintiffs fail to allege any facts showing that the Dearborn Defendants facilitated the repossession. The police did not respond to assist with the repossession; they responded to a report of assault by an armed man. Ironically, Plaintiffs cite *Meyers*

16

in support of their case. In *Meyers*, the Ninth Circuit held that in a § 1983 action against the city and police officers, summary judgment is properly entered in favor of the defendants when the police officers supervise the repossession of a car after being called to the scene because of a physical fight between the debtors and repossession agents. 400 F.3d at 765. While *Meyers* recognizes the potential for a § 1983 action resulting from a repossession, it holds that the present factual situation is insufficient to find state action and defeat a motion for summary judgment in favor of the Dearborn Defendants. *Id.*

Additionally, as set forth in the Court's analysis of the unlawful search claim, the Dearborn Defendants entered Plaintiffs' garage in furtherance of their police duties to search for Mr. Arnold and prevent a violent confrontation, not to assist with the repossession. As this Court has previously held, "officers are not state actors during a private repossession if they act only to keep the peace." *McFarland v. Bob Saks Toyota, Inc.*, 466 F.Supp.2d 855, 864 (E.D. Mich. 2006). Therefore, the Court finds that the police entrance into the garage, which provided access for Midwest to repossess the Arnold's car, does not qualify as facilitating the repossession.

### 3. Repossession as to the Midwest Defendants

Finally, it is undisputed that Defendant Midwest and its employees are private actors. Plaintiffs cannot state a claim under § 1983 against a private party unless that party is acting under power which has been delegated to it by the State and traditionally held by the State. *Flagg*, 436 U.S. at 149. A private party's repossession of a car "will not be attributed to the state unless the state *compels* the action." *Coleman*, 628 F.2d at

17

961 (emphasis added). Although the Dearborn Defendants admit to *allowing* the repossession to take place, Plaintiffs fail to allege any facts to support a claim that the police compelled the repossession to take place. The record reflects that the police objectively monitored the repossession to ensure it was conducted peacefully, and there is no evidence that Plaintiffs objected to the repossession once police arrived.

Because Plaintiffs have failed to allege any facts claiming that Defendant Midwest and its employees were acting under such a state power when they conducted the repossession, the § 1983 claim against Defendant Midwest and its employees fails as a matter of law. Finally, as discussed in the above sections, even when viewing the facts in the light most favorable to the Plaintiff, the Court finds that no constitutional rights were violated, and summary judgment is properly entered in favor of all Defendants for the § 1983 claims. Because the Court has found no Constitutional violations in this matter, it need not address the arguments related to qualified immunity or municipal liability for inadequacy of police training. *See Canton v. Harris*, 489 U.S. 378, 109 S.Ct. 1197 (1989).

**D.    42 U.S.C. § 1988**

Plaintiffs request the Court to grant them attorney's fees for bringing this action for violation of Plaintiffs' civil rights. "In any action or proceeding to enforce a provision of sections 1981, 1981a, 1982, 1983, 1985, and 1986 of this title, . . . the court, in its discretion, may allow a prevailing party, other than the United States, a reasonable attorney's fee as part of the costs . . . ." 42 U.S.C. § 1988(b). Because the Court has

granted summary judgment in favor of Defendants for the § 1983 claims, and Plaintiffs have dismissed the remaining federal claims, the Plaintiffs cannot be a prevailing party as required by § 1988(b). Therefore, the Court finds no grounds for relief under § 1988, and Plaintiffs claim for attorney fees is dismissed as a matter of law.

## IV. CONCLUSION

Having dismissed all of Plaintiffs' federal claims, the Court declines to exercise jurisdiction over the remaining state law claims against Defendants Midwest and Henry for wrongful repossession, breach of peace, and trespass. 28 U.S.C. § 1367(c)(3). For all the reasons set forth above in this opinion and order, and the Court being otherwise fully advised in the premises,

IT IS HEREBY ORDERED that Defendants' motions for summary judgment [Dkt. #45 and 46] are GRANTED IN PART as to all remaining federal claims, including Counts I, II, III, and V, which are DISMISSED with prejudice.

IT IS FURTHER ORDERED that Plaintiffs' request to amend their complaint is DENIED.

IT IS FURTHER ORDERED that Plaintiffs' state law claims, including Counts VI, VII, and VIII, against Defendants Midwest and John Henry are DISMISSED without prejudice.

                                                s/Gerald E. Rosen
                                                Chief Judge, United States District Court

Dated: January 27, 2011

I hereby certify that a copy of the foregoing document was served upon counsel of record on January 27, 2011, by electronic and/or ordinary mail.

                                      s/Ruth A.Gunther
                                      Case Manager
                                      (313) 234-5137